UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ELISA LA TORRE,                                   :

                Plaintiff,                    :          14 Civ. 3615 (AJP)

           -against-                      :          **OPINION & ORDER**

CAROLYN W. COLVIN, Commissioner of Social     :
Security,
                                 :
            Defendant.                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

           Plaintiff Elisa La Torre, represented by counsel (Binder & Binder), brings this action

pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the final decision

of the Commissioner of Social Security denying her Supplemental Security Income and Disability

Insurance Benefits.  (Dkt. No. 2: Compl.)  Presently before the Court are the parties' cross-motions

for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 12: La Torre Notice of

Motion; Dkt. No. 14: Comm'r Notice of Motion.)  The parties have consented to decision of this case

by a Magistrate Judge pursuant to 28 U.S.C. § 636(c).  (Dkt. No. 7.)

           For the reasons set forth below, the Commissioner's motion for judgment on the

pleadings is <u>DENIED</u>, and La Torre's motion for judgment on the pleadings is <u>GRANTED</u> to the

extent of remanding the case to the Commissioner for further proceedings consistent with this

Opinion.

<u>FACTS</u>

**<u>Procedural Background</u>**

           On April 6, 2011, La Torre filed for Disability Insurance Benefits ("DIB") and

Supplemental Security Income ("SSI") alleging that she was disabled since February 1, 2011.  (Dkt. No. 11: Admin. Record filed by the Comm'r ("R.") 170-86.)  On June 27, 2011, the Social Security Administration found La Torre not disabled.  (R. 100-07.)  On August 2, 2011, La Torre requested an administrative hearing.  (R. 108-11.)

Administrative Law Judge ("ALJ") Jack Russak conducted a hearing on June 26, 2012.  (R. 75-96.)  La Torre appeared without counsel.  (R. 75, 77.)  On August 4, 2012 ALJ Russak issued a written decision finding that La Torre was not disabled.  (R. 54-67.)  ALJ Russak's decision became the Commissioner's final decision when the Appeals Council denied La Torre's counseled request for review on February 28, 2014.  (R. 7-10.)

**<u>Non-Medical Evidence</u>**

La Torre was born on August 5, 1960, and was fifty years old at the date of the alleged onset of her disability. (R. 170, 175.)  La Torre completed two years of college in Puerto Rico in 1982.  (R. 87, 203.)  From September 1994 to October 2000, La Torre worked as a mail sorter and machine operator.  (R. 225, 248.)  The job required her to frequently lift mail boxes and bags weighing up to fifty pounds.  (R. 229.)  From January to April 2001 and January to April 2002, La Torre worked as a tax preparer.  (R. 203, 248.)  From April 2003 to July 2003, La Torre worked as a machine operator at a factory.  (R. 225, 248.)  The job required her to frequently lift and carry boxes and bags weighing up to 50 pounds.  (R. 228.)  La Torre cared for the elderly at a nursing home for an unspecified time frame in 2003.  (R. 225.)  The job required her to walk and stand for seven hours each day, and frequently lift objects and food trays weighing up to fifty pounds.  (R. 227.)  From September 2003 to September 2010, La Torre performed data entry for the Girl Scout Council of N.Y.  (R. 225, 248.)  The job required her to sit for six hours each day, walk and stand for an hour each day, and frequently lift objects weighing less than ten pounds.  (R. 226.)  La Torre

testified that when the Girl Scout Council reduced their personnel in September 2010, they "took advantage" of the time she missed for appointments and fired her.  (R. 78.)  La Torre also testified that she was laid off because of a reduction in work.  (R. 81.)  La Torre stated that she "make[s] an effort" to find new employment, but because she has "so many [medical] appointments," no one will hire her.  (R. 82.)

La Torre lives with her husband in a first floor apartment in the Bronx.  (R. 77, 83.)  She has lived there for eighteen years.  (R. 83.)  When La Torre takes her medication, she is confined to her home.  (R. 214.)  If she has an appointment outside the home she limits her medication because taking it makes her dizzy.  (R. 214.)  She requires notes to remind her of daily tasks and which medications to take at what times.  (R. 215.)  La Torre "sleep[s] all day with the medication."  (R. 92.)  Every morning after taking her medicine she rests "for a little while" because the medication makes her drowsy and because of her depression.  (R. 93.)  Following that, she tries to walk for about half an hour.  (R. 93.)  La Torre is able to walk up to two blocks if she walks slowly.  (R. 91, 220.)  Every seven to ten minutes she has to stop to rest for ten to fifteen minutes before she is able to continue walking.  (R. 91, 220.)

After she walks, La Torre returns home and "do[es] what [she] can."  (R. 93.)  She picks her granddaughter up from school across the street.  (R. 93-94.)  La Torre is able to sit and stand for ten or fifteen minutes at a time.  (R. 91.)  La Torre sews and reads for entertainment, but does not do either activity often because she "never finish[es]."  (R. 217.)  La Torre is able to leave the house alone to shop for food if the store is across the street, but if she ventures farther her husband or one of her daughters accompanies her.  (R. 92.)  La Torre prepares food "daily, every two days," unless she forgets.  (R. 92, 215.)  La Torre irons and does light cleaning, but her husband mops, cleans the bathroom and does laundry because the detergent fumes bother her.  (R. 92.)  La

Torre told ALJ Russak that she does not go to church (R. 86), but in her application for benefits she listed church and the hospital as places she goes every week (R. 218).  Once a month, La Torre's husband drives her to visit her daughter in Queens.  (R. 86.)

In a disability report completed by A. Perreaux at the disability field office pursuant to an in-person interview (R. 197-200), Perreaux noted that La Torre had difficulty sitting and standing (R. 199).  Perreaux specifically reported: La Torre "had trouble sitting. She was s[h]ifting in her seat due to pain.  She walked slow from reception area to interview area." (R. 199.)

**Medical Evidence**

### Consultative Examinations

La Torre had two consultative examinations on May 19, 2011: Dr. William Lathan and Dr. Arlene Broska conducted internal medicine and psychiatric evaluations respectively.  (R. 299-302, 303-06.)

Dr. Lathan reported that La Torre appeared "to be in no acute distress," but had a limp favoring the right side, and was unable to walk on heels and toes.  (R. 304.)  La Torre needed no help changing or getting on and off the exam table.  (R. 304.)  Her squat was fifty percent, but she was "[a]ble to rise from chair without difficulty." (R. 304.)  Dr. Lathan reported that La Torre's joints were stable and nontender, with "[n]o trigger points evident," and no "redness, heat, swelling or effusion." (R. 305.)  Dr. Lathan diagnosed a history of fibromyalgia, asthma and depression.  (R. 305.)  Dr. Lathan concluded that La Torre had "a moderate restriction for stooping, squatting and strenuous exertion," and "should avoid smoke, dust and noxious fumes." (R. 305.)  Dr. Lathan recommended a psychiatric consultation for La Torre.  (R. 305.)

At the consultative psychiatric examination, La Torre reported that she "cleans twice a week, does laundry once a week, shops two to three times a week, manages her own money, and

takes public transportation independently."   (R. 300.)   Dr. Broska described La Torre as "cooperative," with "adequate" overall presentation, social skills and manner of relating.  (R. 301.) Dr. Broska reported that La Torre's memory was within normal limits, and she "could recall three of three objects immediately and after five minutes."  (R. 300, 301.)  La Torre's attention and concentration was "intact," and she was able to "maintain attention and concentration throughout the interview." (R. 301.) Dr. Broska further noted that La Torre's intellectual functioning is "in the average range," with a general fund of information appropriate to her experience.  (R. 300.)  Dr. Broska found that La Torre could "perform simple tasks independently," and "make appropriate decisions and relate adequately with others," although she "may not always appropriately deal with stress." (R. 300.) Dr. Broska diagnosed La Torre with adjustment disorder with mixed anxiety and depressed mood.  (R. 300.)  Dr. Broska concluded that "[t]he results of the examination appear to be consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with [La Torre's] ability to function on a daily basis."  (R. 300.)  Dr. Broska recommended that La Torre continue with mental health treatment.  (R. 302.)

**Medical History Evaluations by D. Zanni and Psychologist T. Harding**

On May 31, 2011, disability analyst D. Zanni completed a physical residual functional capacity assessment of La Torre.  (R. 307-12.)  After reviewing La Torre's medical records, Zanni found that La Torre could sit for about six hours and stand for at least two hours in an eight hour work day. (R. 308.) Zanni indicated that La Torre could occasionally and  frequently lift or carry up to ten pounds.  (R. 308.)  Zanni noted that La Torre had a limp and used a cane for support balance.  (R. 308.)  Due to La Torre's asthma, Zanni indicated that La Torre should avoid concentrated exposure to humidity, fumes, odors, gases and poor ventilation.  (R. 310.)  Zanni

concluded that La Torre had moderate restrictions for strenuous activity, and suggested sedentary residual functional capacity with a restriction from environmental irritants.  (R. 310.)

On June 24, 2011, psychologist T. Harding performed a psychiatric review of La Torre's medical records.  (R. 313-26.)  Dr. Harding indicated that La Torre's impairment was not severe under section 12.04, "affective disorders."  (R. 313.)  Dr. Harding found that La Torre had a mild restriction in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, but no episodes of deterioration.  (R. 323.)  Dr. Harding found the evidence did not support the presence of section 12.04(C) criteria.  (R. 324.)

### Treating Physicians at Lincoln Medical and Mental Health Center

On January 21, 2011, La Torre was seen by Dr. Efthimiou at the rheumatology clinic of Lincoln Medical and Mental Health Center.  (R. 267-70.)  La Torre complained of "electric/shock" pain and neck stiffness with a "pulling burning sensation." (R. 268.)  Dr. Efthimiou noted tenderness over the bilateral deltoid, worse on the right side, lumbar muscle tenderness, and six trigger points. (R. 269.)  Dr. Efthimiou diagnosed myalgia and myositis,[1/] prescribed Sevella and referred La Torre for physical therapy.  (R. 269.)

On March 16, 2011, La Torre saw Dr. Peter Kaganowicz.  (R. 356-58.)  La Torre had been referred from rheumatology for fibromyalgia.  (R. 357.)  La Torre reported suffering from generalized body pain for two years, with occasional bilateral hand tingling, in addition to depression. (R. 357.)  Dr. Kaganowicz noted that La Torre "became teary eyed when speaking about the difficulties of losing her job." (R. 357.)  Dr. Kaganowicz diagnosed La Torre with myalgia and

---

[1/]     Myalgia is "pain in a muscle or muscles."  Dorland's Illustrated Medical Dictionary at 1214 (32d ed. 2012).  Myositis is "inflammation of a voluntary muscle."  Id. at 1225.

myositis.  (R. 357.)  He found generalized tenderness of her bilateral trapezii, bilateral upper extremities, low back, bilateral knees and hips.  (R. 357.)  He noted that she could walk on her heels and toes, and the range of motion in her cervical and lower spine was within normal limits.  (R. 357.)  Dr. Kaganowicz referred La Torre to physical therapy and psychiatry, and instructed her to continue taking Tramadol.  (R. 357-58.)

On April 7, 2011, La Torre saw physical therapist Pradeep Bansal for an evaluation. (R. 360-63.)  La Torre reported that her pain was getting worse with time and was usually worse in the mornings, limiting her daily activities.  (R. 360, 361.)  Bansal noted tenderness in her low back and ankles, her rotation and side flexion were limited by twenty-five percent due to pain, and her gait was antalgic on her right lower extremities.  (R. 360.)  Bansal provided La Torre with a cane, gave her therapeutic exercises to improve strength and flexibility, and instructed her to continue physical therapy.  (R. 361-62.)

On April 22, 2011, La Torre was referred to social worker Leora Botnick because she was worried about having her first colonoscopy.  (R. 370-73.)  Botnick noted that La Torre had "several medical problems including fibromyalgia" and was frustrated by the number of pills she had to take.  (R. 371, 372.)  La Torre told Botnick that although she had been referred to an outside clinic for psychotherapy, she declined because she did not want to see a different person each time she went.  (R. 372.)  Botnick explained that La Torre would have a provider at the clinic, but La Torre still refused.  (R. 372.)  Botnick encouraged La Torre "to seek mental health care or attend a support group" for people with medical problems, but La Torre again declined.  (R. 372.)

On May 10, 2011, La Torre had a telephone triage consultation with Nurse Hernandez.  (R. 349-51.)  La Torre complained of joint pain that had not improved after she took

her pain medication.  (R. 350.)  Nurse Hernandez advised her to go to the emergency room if her pain got worse.  (R. 350-51.)

On March 15, 2012, La Torre saw Dr. Takeshige, who ordered bilateral knee and thoracic spine views.  (R. 383, 385-86.)  The bilateral knee and thoracic spine views, taken on March 19, 2012, were "unremarkable."  (R. 385-86.)

On April 10, 2012, La Torre saw Dr. Hanan for joint pain.  (R. 338-40.)  Dr. Hanan noted that La Torre had an antalgic gait favoring the right lower extremities, generalized tenderness of the bilateral trapezii, bilateral upper extremities, low back, bilateral knees and hips.  (R. 339.)  Dr. Hanan found her range of motion to be "functional," and she was able to walk on her heels and toes.  (R. 339.)  Dr. Hanan noted that La Torre used a cane for ambulation.  (R. 339.)  Dr. Hanan recommended physical therapy, continued cane use and follow up with her primary care physician.  (R. 339.)

On June 12, 2012, La Torre again saw Dr. Hanan for joint pain.  (R. 335-37.)  He observed the same symptoms as on April 10, 2012.  (R. 336.)  Dr. Hanan recommended physical therapy and continued use of the cane and pain medication.  (R. 336.)

**ALJ Russak's Decision**

On August 4, 2012 ALJ Russak issued a written decision denying La Torre's application for DIB and SSI.  (R. 54-67.)  ALJ Russak applied the appropriate five-step analysis.  (R. 61-67.)  First, ALJ Russak found that La Torre "ha[d] not engaged in substantial gainful activity since February 1, 2011, the alleged onset date."  (R. 62.)  Second, ALJ Russak found that La Torre had the severe impairments of fibromyalgia and asthma, and the non-severe impairment of depression.  (R. 62.)  Third, ALJ Russak found that La Torre did not have an impairment or

combination of impairments that met or medically equaled the severity of a listed impairment in 20

C.F.R. Part 404, Subpart P, Appendix 1.  (R. 63-64.)

> ALJ Russak next determined that LaTorre
>
> has the residual functional capacity to perform less than the full range of light work; occasional climbing of ropes, ladders, scaffolding, stooping, crouching, kneeling or crawling; frequently use ramps and stairs; avoid frequent exposure to extreme heat or extreme cold; frequently avoid . . . exposure to heat and wetness, humidity, and irritants . . . and frequently avoid poorly ventilated areas, chemicals and unprotected heights.

(R. 64.)

ALJ Russak made a credibility determination about La Torre's subjective allegations

of pain, finding that she "was not fully credible to the extent that she felt her impairments were

functionally incapacitating." (R. 64.) ALJ Russak found it "most telling" that La Torre's testimony

that she "could only walk one block and then stop for 10 minutes" was contradicted by her testimony

that her daily routine included going for a half hour walk.  (R. 64.)  Further, he found that her

testimony that she could only sit for ten to fifteen minutes at a time was contradicted by her sitting

for approximately twenty minutes during her June 26, 2012 hearing.  (R. 64.)  ALJ Russak also

noted that La Torre "did not stop work due to her injury, rather she was terminated, in part due to

the employer having less work for her to perform." (R. 64.)  ALJ Russak supported his credibility

determination with further inconsistencies, stating that La Torre  reported a greater mode of living

to consultative examiner Arlene Broska than she did at the June 26, 2012 hearing, and that although

La Torre reported that "her activities of daily living were mostly done by her husband, not only does

she walk half an hour, but she also tries to keep herself busy (i.e. she sews)."  (R. 65.)

ALJ Russak summarized the medical evidence supporting his residual functional

capacity ("RFC") assessment.  (R. 64-66.)   He noted that La Tore saw her doctors only once a

month, and that "excluding doctors in hospitals" she had not been treated since August 2, 2011. (R.

65.) Regarding her fibromyalgia, he noted that she reported the pain "was helped by Tramadol and

Tylenol." (R. 65.) Tests performed by La Torre's physical therapist indicated "a somewhat

diminished musculoskeletal range of motion and only minimally diminished muscle strength" with

a "normal" gait. (R. 65.) There are no records to indicate that La Torre returned to physical therapy

after her initial appointment. (R. 65.) Although she used the prescribed cane, Dr. Hanan reported

that she "could toe and heel walk, had a functional range of motion and had intact sensation and

reflexes." (R. 65.) Her history of asthma notwithstanding, ALJ Russak noted that La Torre's

respiratory examinations in 2010 and 2011 were benign. (R. 65.) Moreover, although consultative

physician Dr. Lathan had noted "a right sided limp," La Torre's "musculoskeletal, neurological and

extremities examinations were otherwise completely normal." (R. 65.)

       ALJ Russak concluded that despite her fibromyalgia and asthma, La Torre was not

disabled as alleged, because

> she is independent in activities of daily living; she has been diagnosed as physically
> stable; her joint pain can improve with, and be controlled by, pain medication; she
> has been non-compliant with her physical therapy referral; she had full ranges of
> motion at her physical consultative examination, despite a limp; and
> she has not sought extensive (the record indicates no) treatment despite alleging that
> she is physically and mentally incapacitated.

(R. 65-66.)[2]

       At the fourth step, ALJ Russak determined that La Torre is unable to perform any

past relevant work, and that her past relevant work as a machine operator "is too physically

---

[2]    ALJ Russak gave no weight to Zanni's evaluation of La Torre's medical records because "as
a single decision maker that consultant is not an acceptable medical source within the
meaning of 20 CFR 404.1513(d) and 20 C.F.R 416.913(d) and is thus unable to establish or
comment as to the existence of a medically determinable impairment or any related
functional limitations." (R. 66.)

demanding." (R. 66.)  At the fifth and final step, ALJ Russak determined that given La Torre's "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [La Torre] can perform." (R. 66.)  ALJ Russak concluded that the limitations on La Torre's ability to perform light work have little or no effect on the occupational base of unskilled light work, thus a finding of "not disabled" was appropriate.  (R. 67.)  ALJ Russak did not take any testimony from a vocational expert.  (R. 66-67.)

**La Torre's Appeal**

By notice dated August 16, 2012 La Torre requested review of ALJ Russak's decision, stating: "I believe that I am still disabled and unable to work.  My conditions have gotten worse." (R. 53.)  In a September 23, 2013 submission, La Torre's counsel (Binder & Binder) asserted that ALJ Russak erred by (1) failing to perform an obesity analysis; (2) failing appropriately to assess the severity of La Torre's mental impairments; (3) failing to consider La Torre's mental impairment or use of a cane for ambulation in assessing her residual functional capacity; and (4) failing to obtain the testimony of a vocational expert.  (R. 251-54.)

### Additional Evidence Before the Appeals Council

La Torre's counsel submitted (R. 255) the following evidence to the Appeals Council: (1) a multiple impairment questionnaire dated October 9, 2012 from treating physician Dr. Takeshige (R. 519-26); (2) a psychiatric/psychological impairment questionnaire from treating psychiatrist Upendra Bhatt (R. 16-23); (3) a FEGS medical report from Dr. Bhatt (R. 36-38); (4) medical records from Lincoln Medical and Mental Health Center dated January 26, 2010 through June 12, 2012 (R. 397-517), which largely overlapped with the record before the ALJ (compare R.

256-98, 335-95); and (5) medical evidence from Bronx-Lebanon Hospital Center dated January 9, 2013 (R. 40, 43).[3/]

**Dr. Takeshige**

On a multiple impairment questionnaire, Dr. Takeshige reported that La Torre was treated every three to four months beginning on June 3, 2010 and most recently on October 3, 2012. (R. 519.)  Dr. Takeshige diagnosed La Torre with fibromyalgia, depression, gait issue, anemia, migraine and obesity.  (R. 519.)  The clinical findings supporting his diagnoses included ambulation with a cane, paraspinal tenderness and antalgic gait.  (R. 519.)  Dr. Takeshige noted that La Torre's x-rays and labs supported his diagnoses.  (R. 520.)   Dr. Takeshige estimated that La Torre's pain was moderate, at five on a ten point scale.  (R. 521.)  Dr. Takeshige opined that in an eight hour day, La Torre could not sit or stand for more than an hour, and that it would be medically necessary or recommended that she not sit or stand continuously in a work setting.  (R. 521-22.)  Dr. Takeshige stated that La Torre's experience "of pain, fatigue or other symptoms" was periodically severe enough to interfere with her attention and concentration.  (R. 524.)  He opined that about once an hour La Torre would need to rest for an unscheduled five to ten minute break.  (R. 525.)  La Torre's symptoms were likely to increase if she were placed in a competitive work environment.  (R. 523.)  Dr. Takeshige indicated that La Torre would miss more than three days of work a month because of impairments or medical appointments.  (R. 525.)  The indicated symptoms and limitations applied back to June 2010.  (R. 525.)

---

[3/]     The Bronx-Lebanon medical records show that La Torre was admitted to the emergency room on January 8, 2013 and discharged on January 9, 2013, but did not indicate for what. (R. 40.)  The hospital's discharge instructions indicate that La Torre was taking four medications: Imitrex, Celexa, atorvastatin, and amitriptyline.  (R. 43.)  Bronx-Lebanon scheduled follow up appointments for La Torre with the Ogden Family Practice in the Bronx.  (R. 43.)

### Dr. Upendra Bhatt

On a psychiatric/psychological impairment questionnaire dated October 8, 2013 (R. 16-23), Dr. Bhatt stated that he treated La Torre once a month beginning October 30, 3012 and most recently on October 8, 2013 (R. 16). Dr. Bhatt diagnosed major depression on Axis I, gastritis and fibromyalgia on Axis III, and a "moderate" stressors on Axis IV. (R. 16.) On Axis V, Dr. Bhatt indicated a current GAF of 55-60, with the lowest GAF in the past year of 40. (R. 16.)[4/] Dr. Bhatt's diagnoses were based on psychological interviews. (R. 17.) La Torre's primary symptoms were depression, crying spells, lack of interest, fatigue and guilty feelings. (R. 18.) Dr. Bhatt did not believe La Torre was a malingerer. (R. 22.) Dr. Bhatt opined that La Torre's symptoms were likely to cause her to miss more than three days of work each month. (R. 23.) Dr. Bhatt opined that La Torre was moderately limited in the ability to understand and remember instructions, the ability to maintain attention and concentration, and the ability to make simple work-related decisions. (R. 19-20.) Dr. Bhatt found that La Torre was markedly limited in the ability to carry out instructions, the ability to work on a schedule and the ability to work with others. (R. 19-20.) He also found her

---

[4/]     GAF, Global Assessment of Functioning, assigns a value on a scale of 1 to 100 to rate overall psychological functioning; the scale "takes into account psychological, social, and occupational functioning." Zabala v. Astrue, 595 F.3d 402, 405 n.1 (2d Cir. 2010) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 34 (4th ed. rev. 2000)). A GAF score from 51-60 represents moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Zabala v. Astrue, 595 F.3d at 405 n.3. A GAF of 41-50 indicates "serious symptoms" or "any serious impairment" in functioning. Zabala v. Astrue, 595 F.3d at 405 n.2.

14

markedly limited in the ability to complete a normal workweek without interruptions from psychologically based symptoms.  (R. 20.)

   In a FEGS Health and Human Services System medical report dated January 22, 2013, Dr. Bhatt diagnosed La Torre with major depression and anxiety.  (R. 36.)  In his clinical findings, Dr. Bhatt noted that La Torre "has histories of major depression and anxiety."  (R. 36.)  Dr. Bhatt further noted "[s]he has vegetative symptoms of depression."  (R. 36.)  Dr. Bhatt recommended an adjustment to La Torre's medication.  (R. 36.)  On a physician's functional assessment form of the same date, Dr. Bhatt reported that La Torre had a depressed mood and anxious affect, with "acute decompensation."  (R. 37.)  Dr. Bhatt opined that La Torre was temporarily unemployable.  (R. 37.)

   **The Appeals Council's Decision**

   On February 28, 2014, the Appeals Council denied review of ALJ Russak's decision. (R. 7-12.)  The Appeals Council stated: "we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council . . . We found that this information does not provide a basis for changing the Administrative Law Judge's decision."  (R. 7-8.)   The Appeals Council found that Dr. Bhatt's psychiatric/psychological impairment questionnaire and FEGS medical report were "about a later time" and therefore did not affect a decision about whether La Torre was disabled on or before the date of the ALJ's decision, August 4, 2012.  (R. 8.)

## ANALYSIS

## I.     THE APPLICABLE LAW

### A.     Definition Of Disability

A person is considered disabled for Social Security benefits purposes when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); see, e.g., Barnhart v. Thomas, 540 U.S. 20, 23, 124 S. Ct. 376, 379 (2003); Barnhart v. Walton, 535 U.S. 212, 214, 122 S. Ct. 1265, 1268 (2002); Impala v. Astrue, 477 F. App'x 856, 857 (2d Cir. 2012).[5/]

> An individual shall be determined to be under a disability only if [the combined effects of] his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see, e.g., Barnhart v. Thomas, 540 U.S. at 23, 124 S. Ct. at 379; Barnhart v. Walton, 535 U.S. at 218, 122 S. Ct. at 1270; Salmini v. Comm'r of Soc. Sec.,

---

[5/]     See also, e.g., Salmini v. Comm'r of Soc. Sec., 371 F. App'x 109, 111 (2d Cir. 2010); Betances v. Comm'r of Soc. Sec., 206 F. App'x 25, 26 (2d Cir. 2006); Surgeon v. Comm'r of Soc. Sec., 190 F. App'x 37, 39 (2d Cir. 2006); Rodriguez v. Barnhart, 163 F. App'x 15, 16 (2d Cir. 2005); Malone v. Barnhart, 132 F. App'x 940, 941 (2d Cir. 2005); Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005); Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002); Draegert v. Barnhart, 311 F.3d 468, 472 (2d Cir. 2002); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

371 F. App'x at 111; <u>Betances</u> v. <u>Comm'r of Soc. Sec.</u>, 206 F. App'x at 26; <u>Butts</u> v. <u>Barnhart</u>, 388 F.3d at 383; <u>Draegert</u> v. <u>Barnhart</u>, 311 F.3d at 472.[6/]

In determining whether an individual is disabled for disability benefit purposes, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." <u>Mongeur</u> v. <u>Heckler</u>, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).[7/]

**B.    Standard Of Review**

A court's review of the Commissioner's final decision is limited to determining whether there is "substantial evidence" in the record as a whole to support such determination. <u>E.g.</u>, 42 U.S.C. § 405(g); <u>Giunta</u> v. <u>Comm'r of Soc. Sec.</u>, 440 F. App'x 53, 53 (2d Cir. 2011).[8/] "'Thus, the role of the district court is quite limited and substantial deference is to be afforded the

---

[6/]    See also, e.g., <u>Shaw</u> v. <u>Chater</u>, 221 F.3d at 131-32; <u>Rosa</u> v. <u>Callahan</u>, 168 F.3d at 77; <u>Balsamo</u> v. <u>Chater</u>, 142 F.3d at 79.

[7/]    See, e.g., <u>Brunson</u> v. <u>Callahan</u>, No. 98-6229, 199 F.3d 1321 (table), 1999 WL 1012761 at *1 (2d Cir. Oct. 14, 1999); <u>Brown</u> v. <u>Apfel</u>, 174 F.3d at 62.

[8/]    See also, e.g., <u>Prince</u> v. <u>Astrue</u>, 514 F. App'x 18, 19 (2d Cir. 2013); <u>Salmini</u> v. <u>Comm'r of Soc. Sec.</u>, 371 F. App'x 109, 111 (2d Cir. 2010); <u>Acierno</u> v. <u>Barnhart</u>, 475 F.3d 77, 80-81 (2d Cir.), cert. denied, 551 U.S. 1132, 127 S. Ct. 2981 (2007); <u>Halloran</u> v. <u>Barnhart</u>, 362 F.3d 28, 31 (2d Cir. 2004); <u>Jasinski</u> v. <u>Barnhart</u>, 341 F.3d 182, 184 (2d Cir. 2003); <u>Veino</u> v. <u>Barnhart</u>, 312 F.3d 578, 586 (2d Cir. 2002); <u>Shaw</u> v. <u>Chater</u>, 221 F.3d 126, 131 (2d Cir. 2000); <u>Brown</u> v. <u>Apfel</u>, 174 F.3d 59, 61 (2d Cir. 1999); <u>Rosa</u> v. <u>Callahan</u>, 168 F.3d 72, 77 (2d Cir. 1999); <u>Tejada</u> v. <u>Apfel</u>, 167 F.3d 770, 773 (2d Cir. 1999); <u>Perez</u> v. <u>Chater</u>, 77 F.3d 41, 46 (2d Cir. 1996); <u>Rivera</u> v. <u>Sullivan</u>, 923 F.2d 964, 967 (2d Cir. 1991); <u>Mongeur</u> v. <u>Heckler</u>, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam); <u>Dumas</u> v. <u>Schweiker</u>, 712 F.2d 1545, 1550 (2d Cir. 1983).

Commissioner's decision.'"  Morris v. Barnhart, 02 Civ. 0377, 2002 WL 1733804 at *4 (S.D.N.Y. July 26, 2002) (Peck, M.J.).[9]

The Supreme Court has defined "substantial evidence" as "'more than a mere scintilla [and] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971); accord, e.g., Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013); Rosa v. Callahan, 168 F.3d at 77; Tejada v. Apfel, 167 F.3d at 773-74.[10]  "[F]actual issues need not have been resolved by the [Commissioner] in accordance with what we conceive to be the preponderance of the evidence."  Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212, 103 S. Ct. 1207 (1983).  The Court must be careful not to "'substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review.'"  Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991).[11]

The Court, however, will not defer to the Commissioner's determination if it is "'the product of legal error.'"  E.g., Duvergel v. Apfel, 99 Civ. 4614, 2000 WL 328593 at *7 (S.D.N.Y.

---

[9]   See also, e.g., Karle v. Astrue, 12 Civ. 3933, 2013 WL 2158474 at *9 (S.D.N.Y. May 17, 2013) (Peck, M.J.), report & rec. adopted, 2013 WL 4779037 (S.D.N.Y. Sept. 6, 2013); Santiago v. Astrue, 11 Civ. 6873, 2012 WL 1899797 *13 (S.D.N.Y. May 24, 2012) (Peck, M.J.); Duran v. Barnhart, 01 Civ. 8307, 2003 WL 103003 at *9 (S.D.N.Y. Jan. 13, 2003); Florencio v. Apfel, 98 Civ. 7248, 1999 WL 1129067 at *5 (S.D.N.Y. Dec. 9, 1999) (Chin, D.J.) ("The Commissioner's decision is to be afforded considerable deference; the reviewing court should not substitute its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a de novo review." (quotations & alterations omitted)).

[10]   See also, e.g., Halloran v. Barnhart, 362 F.3d at 31; Jasinski v. Barnhart, 341 F.3d at 184; Veino v. Barnhart, 312 F.3d at 586; Shaw v. Chater, 221 F.3d at 131; Brown v. Apfel, 174 F.3d at 61; Perez v. Chater, 77 F.3d at 46.

[11]   See also, e.g., Campbell v. Astrue, 465 F. App'x 4, 6 (2d Cir. 2012); Veino v. Barnhart, 312 F.3d at 586.

Mar. 29, 2000) (Peck, M.J.); see also, e.g., Douglass v. Astrue, 496 F. App'x 154, 156 (2d Cir.

2012); Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004), amended on other grounds, 416 F.3d 101

(2d Cir. 2005); Tejada v. Apfel, 167 F.3d at 773 (citing cases).

The Commissioner's regulations set forth a five-step sequence to be used in

evaluating disability claims.  20 C.F.R. §§ 404.1520, 416.920; see, e.g., Barnhart v. Thomas, 540

U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003); Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct.

2287, 2291 (1987).  The Supreme Court has articulated the five steps as follows:

> Acting pursuant to its statutory rulemaking authority, the agency has promulgated regulations establishing a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further.  [1] At the first step, the agency will find nondisability unless the claimant shows that he is not working at a  "substantial gainful activity." [2] At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [3] At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  [4] If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.  [5] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 540 U.S. at 24-25, 124 S. Ct. at 379-80 (fns. & citations omitted); accord, e.g.,

Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012); Rosa v. Callahan, 168 F.3d at 77; Tejada v.

Apfel, 167 F.3d at 774.[12]

---

[12]  See also, e.g., Jasinski v. Barnhart, 341 F.3d at 183-84; Shaw v. Chater, 221 F.3d at 132; Brown v. Apfel, 174 F.3d at 62; Balsamo v. Chater, 142 F.3d 75, 79-80 (2d Cir. 1998); Perez v. Chater, 77 F.3d at 46; Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir. 1995); Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

The claimant bears the burden of proof as to the first four steps; if the claimant meets the burden of proving that he cannot return to his past work, thereby establishing a prima facie case, the Commissioner then has the burden of proving the last step, that there is other work the claimant can perform considering not only his medical capacity but also his age, education and training.  See, e.g., Barnhart v. Thomas, 540 U.S. at 25, 124 S. Ct. at 379-80.[13/]

C.      **The Treating Physician Rule**

The "treating physician's rule" is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion. Specifically, the Commissioner's regulations provide that:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2); see, e.g., Rugless v. Comm'r of Soc. Sec., 548 F. App'x 698, 699-700 (2d Cir. 2013); Meadors v. Astrue, 370 F. App'x 179, 182 (2d Cir. 2010); Colling v. Barnhart, 254 F. App'x 87, 89 (2d Cir. 2007); Lamorey v. Barnhart, 158 F. App'x 361, 362 (2d Cir. 2006).

Further, the regulations specify that when controlling weight is not given a treating physician's opinion (because it is not "well-supported" by other medical evidence), the ALJ must consider the following factors in determining the weight to be given such an opinion: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the evidence that supports the treating physician's report; (4) how

---

[13/]    See also, e.g., Selian v. Astrue, 708 F.3d at 418; Betances v. Comm'r of Soc. Sec., 206 F. App'x 25, 26 (2d Cir. 2006); Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); Rosa v. Callahan, 168 F.3d at 80; Perez v. Chater, 77 F.3d at 46; Berry v. Schweiker, 675 F.2d at 467.

consistent the treating physician's opinion is with the record as a whole; (5) the specialization of the physician in contrast to the condition being treated; and (6) any other factors which may be significant. 20 C.F.R. § 404.1527(c) (2)-(6); see, e.g., Cichocki v. Astrue, 534 F. App'x 71, 74 (2d Cir. 2013); Gunter v. Comm'r of Soc. Sec., 361 F. App'x 197, 197 (2d Cir. 2010); Foxman v. Barnhart, 157 F. App'x 344, 346-47 (2d Cir. 2005); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

When a treating physician provides a favorable report, the claimant "is entitled to an express recognition from the [ALJ or] Appeals Council of the existence of [the treating physician's] favorable . . . report and, if the [ALJ or] Council does not credit the findings of that report, to an explanation of why it does not." Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999); see, e.g., Cichocki v. Astrue, 534 F. App'x at 75; Zabala v. Astrue, 595 F.3d 402, 409 (2d Cir. 2010) (ALJ's failure to consider favorable treating physician evidence ordinarily requires remand pursuant to Snell but does not require remand where the report was "essentially duplicative of evidence considered by the ALJ"); Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984) ("We of course do not suggest that every conflict in a record be reconciled by the ALJ or the Secretary, but we do believe that the crucial factors in any determination must be set forth with sufficient specificity to enable [reviewing courts] to decide whether the determination is supported by substantial evidence." (citations omitted)); Ramos v. Barnhart, 02 Civ. 3127, 2003 WL 21032012 at *7, *9 (S.D.N.Y. May 6, 2003) (The ALJ's "'failure to mention such [treating physician report] evidence and set for[th] the reasons for his conclusions with sufficient specificity hinders [this Court's] ability . . . to decide whether his determination is supported by substantial evidence.'").

The Commissioner's "treating physician" regulations were approved by the Second

Circuit in Schisler v. Sullivan, 3 F.3d 563, 568 (2d Cir. 1993).

**D.      The ALJ's Duty to Develop the Record**

It is the "well-established rule in [the Second] circuit" that the ALJ must develop the

record:

> [I]t is the well-established rule in our circuit "that the social security ALJ, unlike a
> judge in a trial, must on behalf of all claimants . . . affirmatively develop the record
> in light of the essentially non-adversarial nature of a benefits proceeding." Lamay v.
> Comm'r of Soc. Sec., 562 F.3d 503, 508–09 (2d Cir. 2009) (internal quotation marks
> and brackets omitted) [, cert. denied, 559 U.S. 962, 130 S. Ct. 1503 (2010)]; accord
> Butts v. Barnhart, 388 F.3d 377, 386 (2d Cir. 2004), [amended on other grounds],
> 416 F.3d 101 (2d Cir. 2005); Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996); see also
> Gold v. Sec'y of Health, Educ. & Welfare, 463 F.2d 38, 43 (2d Cir. 1972) (pro se
> claimant).   Social Security disability determinations are "investigatory, or
> inquisitorial, rather than adversarial." Butts, 388 F.3d at 386 (internal quotation
> marks omitted).   "[I]t is the ALJ's duty to investigate and develop the facts and
> develop the arguments both for and against the granting of benefits." Id. (internal
> quotation marks omitted); accord Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999).

Moran v. Astrue, 569 F.3d 108, 112-13 (2d Cir. 2009). This duty is heightened when a claimant

proceeds pro se.  See, e.g., Moran v. Astrue, 569 F.3d at 113; Hamilton v. Colvin, 10 Civ. 9641,

2013 WL 3814291 at *13 (S.D.N.Y. July 23, 2013).

**II.      ANALYSIS OF ALJ RUSSAK'S DECISION**

La Torre argues that ALJ Russak committed legal error by failing to develop the

record, and failing to assess her credibility properly.  (See generally Dkt. No. 13: La Torre Br.)  La

Torre also argues that the submission of additional evidence to the Appeals Council warrants

remand. (La Torre Br. 8-9.)  Because legal error warrants remand, Tejada v. Apfel, 167 F.3d 770,

773 (2d Cir. 1999), the Court first reviews the correctness of the legal standards applied.

A.     **ALJ Russak Did Not Sufficiently Develop the Record**

La Torre contends that ALJ Russak's failure to obtain any opinions from her treating physicians in assessing her RFC is reversible error.  (Dkt. No. 13: La Torre Br. at 6-8.)  A claimant's RFC represents an assessment of her ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  It is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1).  ALJ Russak assessed that La Torre had the capacity to perform light work.  (R. 64.)  Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).  A job in the light work category "requires a good deal of walking or standing, or . . . involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  The Second Circuit has held that absence of a medical source statement from a treating physician does not require remand where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." Tankisi v. Comm'r of Soc. Sec., 521 F. App'x 29, 33-34 (2d Cir. 2013).  ALJ Russak based his determination on a survey of La Torre's medical records, consultative examinations, and his own conclusions concerning La Torre's credibility.  (R. 64-66.)

ALJ Russak stated that in making his RFC finding he considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p (R. 64); however, none of La Torre's treating physicians or consultative examiners made any diagnoses or offered any opinion as to her ability to do sustained work activities on a regular and continuing basis.[14/]  The only RFC assessment in the record is by disability analyst

---

[14/]     A regular and continuing basis is defined as 8 hours a day, for 5 days a week, or an
(continued...)

Zanni, and ALJ Russak gave that opinion "no weight."  (R. 66.)  Dr. Lathan opined that La Torre

had a "moderate restriction for stooping, squatting and strenuous exertion," but he made no mention

of her ability to do "a good deal of walking or standing," or lift objects weighing up to twenty

pounds.  (R. 305.)  To the extent that ALJ's Russak's determination was based on Dr. Lathan's

opinion, that opinion is not sufficiently detailed to support the ALJ's RFC determination.  See, e.g.,

Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (statement that claimant "'should be able to lift

. . . objects of a mild degree of weight on an intermittent basis'" remarkably vague and insufficient

to support light work RFC); Correa v. Colvin, No. 13-CV-2458, 2014 WL 4676513 at *7 (E.D.N.Y.

Sept. 19, 2014) (remanding where medical report "did not mention, much less test or observe,

plaintiff's capabilities or limitations with respect to sitting for an extended period"); Andrews v.

Colvin, 13 Civ. 2217, 2014 WL 3630668 at *11 (S.D.N.Y. July 22, 2014) ("Insofar as the ALJ

Decision was based on Dr. Philip's assessment of Plaintiff's limitations, the ALJ erred in relying on

the doctor's vague, non-specified notes regarding Plaintiff's ability to squat, lift, carry, push and

pull."); Longbardi v. Astrue, 07 Civ. 5952, 2009 WL 50140 at *35 (S.D.N.Y. Jan. 7, 2009) (ALJ's

conclusion that plaintiff could perform sedentary work unsupported when there was no indication

"that any test was conducted regarding plaintiff's ability to stand, walk or sit for the prolonged

period of time required by sedentary work.")

         ALJ Russak further referenced La Torre's treatment records in his decision, noting

that her treating physicians and healthcare providers at Lincoln Medical and Mental Health Center

consistently have found trigger points and generalized muscle tenderness, and that she has

_____

14/      (...continued)
         equivalent work schedule. SSR 96-8p(1).

ambulated with a cane since she was given one by her physical therapist on April 7, 2011.  (R. 65.)
Although they discuss symptoms, diagnoses and treatment plans, La Torre's treatment records do
not explain or assess the scope of her work-related capabilities.  No treating medical source opined
on La Torre's ability to perform the tasks associated with light work.  Unlike the ALJ in <u>Tankisi</u> v.
<u>Comm'r of Soc. Sec.</u>, 521 F. App'x at 34, ALJ Russak did not have even an informal assessment of
La Torre's limitations on which to rely in making his determination.

        Despite the insufficient evidence concerning the scope of La Torre's work-related
capabilities, ALJ Russak did not seek further information from Dr. Efthimiou or Dr. Timur, whose
medical notes he cited (R.65), Dr. Takeshige, who he knew to be La Torre's primary care physician
(R. 87), or Dr. Lathan, the consultative examiner.  Even in combination with Dr. Lathan's opinion,
the raw data in the treatment records left ALJ Russak an incomplete record on which to base his
RFC determination.  <u>See</u>, <u>e.g.</u>, <u>Stuart</u> v. <u>Colvin</u>, No. 13-CV-04552, 2014 WL 4954487 at *13
(E.D.N.Y. Sept. 30, 2014); <u>Legall</u> v. <u>Colvin</u>, 13 Civ. 1426, 2014 WL 4494753 at *4 (S.D.N.Y. Sept.
10, 2014) ("'[b]ecause an RFC determination is a medical determination, an ALJ who makes an RFC
determination in the absence of supporting expert medical opinion has improperly substituted his
[or her] own opinion for that of a physician, and has committed legal error'" (citing <u>Hilsdorf</u> v.
<u>Commr' of Soc. Sec.</u>, 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010))).  ALJ Russak thus failed in his
"affirmative obligation to fully develop the administrative record," <u>Calzada</u> v. <u>Astrue</u>, 753 F. Supp.
2d 250, 269 (S.D.N.Y. 2010), which was heightened in this case because at the hearing level La
Torre was not represented by counsel.  <u>See</u>, <u>e.g.</u>, <u>Moran</u> v. <u>Astrue</u>, 569 F.3d 108, 112–13 (2d Cir.
2009).

        Legal errors regarding the duty to develop the record warrant remand.  <u>See</u>, <u>e.g.</u>, <u>Rosa</u>
v. <u>Callahan</u>, 168 F. 3d 72, 79-80 (2d Cir. 1999) (Sotomayor, C.J.) (remanding where ALJ failed to

fully develop record by neglecting to seek information or explanation to supplement treating physicians "sparse" notes which were "conclusive of very little"); Elliott v. Colvin, No. 13-CV-2673, 2014 WL 4793452 at *18 (E.D.N.Y. Sept. 24, 2014) ("[W]here the ALJ has failed to fully develop the factual record, the proper remedy is to remand the case for further proceedings."); Barnwell v. Colvin, 13 Civ. 3683, 2014 WL 4678259 at *12 (S.D.N.Y. Sept. 9, 2014); Oliveras ex rel. Gonzales v. Astrue, 07 Civ. 2841, 2008 WL 2262618 at *8 (S.D.N.Y. May 30, 2008), report & rec. adopted, 2008 WL 2540816 (S.D.N.Y. June 25, 2008).

## B.      The Appeals Council Did Not Properly Address the Additional Evidence

La Torre submitted additional evidence to the Appeals Council. (See pages 11-14 above.)  The Appeals Council must consider new and material evidence if it relates to the period on or prior to the ALJ's decision.  20 C.F.R. § 404.970(b); see, e.g., Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996).   La Torre contends that the Commissioner did not analyze the new evidence appropriately under the treating physician rule.  (Dkt. No. 13: La Torre Br. at 8.)  The Commissioner responds that the new evidence would not have affected the disposition of La Torre's claim.  (Dkt. No. 15: Comm'r Br. at 20.)  In denying La Torre's claim, the Commissioner stated, "We considered whether the Administrative Law Judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.  We found that this information does not provide a basis for changing the Administrative Law Judge's decision."  (R. 8.)

A more detailed assessment of the new evidence is required.  The treating physician rule applies to the Appeals Council.  See, e.g., Snell v. Apfel, 177 F.3d 128, 134 (2d Cir.1999) ("the Appeals Council did have an obligation to explain the weight it gave to the opinions of the other two [treating] doctors"); Barnwell v. Colvin, 13 Civ. 3683, 2014 WL 4678259 at *15 (S.D.N.Y. Sept. 19, 2014) ("Because the additional evidence at issue here is from treating sources, the Appeals

Council was required to comply with regulations applicable to the assessment of opinions from treating sources."); Knepple-Hodyno v. Astrue, No. 11-CV-443, 2012 WL 3930442 at *9 (E.D.N.Y. Sept. 10, 2012) ("When new materials are submitted from treating physicians, the Appeals Council is 'obligated to provide an explanation for [its] decision not to afford controlling weight to an assessment apparently provided by Plaintiff's treating physician.'"); Shrack v. Astrue, 608 F. Supp. 2d 297, 302 (D. Conn. Apr. 1, 2009) (citing Snell v. Apfel, 177 F.3d at 134); Longbardi v. Astrue, 07 Civ. 5952, 2009 WL 50140 at *25 (S.D.N.Y. Jan. 7, 2009) ("Failure to provide explicit 'good reasons' for not crediting a treating source's opinion is a ground for remand." (citing Snell v. Apfel 177 F.3d at 133)).  Because Dr. Takeshige's and Dr. Bhatt's multiple impairment questionnaires (see pages 12-14 above) were new evidence from treating physicians, the Appeals Council was required to evaluate them according to the applicable regulations and give reason for its determination not to credit the favorable reports.  Failure to do so was legal error.  The only reason it gave – that Dr. Bhatt's reports were for a time period after the ALJ's decision (see page 14 above) – clearly does not apply to Dr. Takeshige's report, which clearly stated that La Torre's symptoms and limitations applied back to 2010.  (R. 525.)

These legal errors regarding the duty to develop the record and application of the treating physician rule warrant remand.

### C.   The ALJ's Reliance on the Medical-Vocational Guidelines is Further Basis for Remand

At the fifth step of the disability analysis, ALJ Russak relied exclusively on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2.  (R. 66-67.)  ALJ Russak's analysis at the fifth step provides a further basis for remand.

Commonly referred to as "the Grid," the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2 take into account

> the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience.  Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy.  Generally the result listed in the Grid is dispositive on the issue of disability.

Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y. 1996) (fn. omitted); see, e.g., Heckler v. Campbell, 461 U.S. 458, 461-62, 465-68, 103 S. Ct. 1952, 1954-55, 1956-58 (1983) (upholding the promulgation of the Grid); Roma v. Astrue, 468 F. App'x 16, 20-21 (2d Cir. 2012); Martin v. Astrue, 337 F. App'x 87, 90 (2d Cir. 2009); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996); Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).

However, "relying solely on the Grids is inappropriate when nonexertional limitations 'significantly diminish' plaintiff's ability to work so that the Grids do not particularly address plaintiff's limitations."  Vargas v. Astrue, 10 Civ. 6306, 2011 WL 2946371 at *13 (S.D.N.Y. July 20, 2011); see also, e.g., Travers v. Astrue, 10 Civ. 8228, 2011 WL 5314402 at *10 (S.D.N.Y. Nov. 2, 2011) (Peck, M.J.), report & rec. adopted, 2013 WL 1955686 (S.D.N.Y. May 13, 2013); Lomax v. Comm'r of Soc. Sec., No. 09-CV-1451, 2011 WL 2359360 at *3 (E.D.N.Y. June 6, 2011) ("Sole reliance on the grids is inappropriate, however, where a claimant's nonexertional impairments 'significantly limit the range of work permitted by his exertional limitations.'").[15]

---

[15]   Under the Social Security Act, nonexertional limitations are those "limitations and restrictions imposed by [a claimant's] impairment(s) and related symptoms, such as pain, affect[ing] only [the] ability to meet the demands of jobs other than the strength demands." 20 C.F.R. § 416.969a(c)(1); see, e.g., Butts v. Barnhart, 388 F.3d 377, 381 n.1 (2d Cir. 2004), amended on other grounds, 416 F.3d 101 (2d Cir. 2005).

Rather, where the claimant's nonexertional limitations "'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." Zabala v. Astrue, 595 F.3d 402, 410 (2d Cir. 2010) (quoting Bapp v. Bowen, 802 F.2d at 605); see also, e.g., Selian v. Astrue, 708 F.3d 409, 421 (2d Cir. 2013) ("We have explained that the ALJ cannot rely on the Grids if a non-exertional impairment has any more than a 'negligible' impact on a claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert."); Rosa v. Callahan, 168 F.3d at 82 ("Where significant nonexertional impairments are present at the fifth step in the disability analysis, however, 'application of the grids is inappropriate.'  Instead, the Commissioner 'must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform.'" (quoting & citing Bapp v. Bowen, 802 F.2d at 603)); Suarez v. Comm'r of Soc. Sec., No. 09-CV-338, 2010 WL 3322536 at *9 (E.D.N.Y. Aug. 20, 2010) ("If a claimant has nonexertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert." (quoting Zabala v. Astrue, 595 F.3d at 411)). Although the ALJ has discretion to determine that a claimant's disability is adequately addressed by the Grid, when, as here, nonexertional limitations are claimed, the ALJ must "consider the intermediate question–whether the range of work [a claimant] could perform was so significantly diminished as to require the introduction of vocational testimony." Bapp v. Bowen,  802 F.2d at 606; see also, e.g., Lugo v. Colvin, 13 Civ. 1767, 2014 WL 5045630 at *12-13 (S.D.N.Y. Oct. 9, 2014); Hernandez v. Colvin, 13 Civ. 03035, 2014 WL 3883415 at *15 (S.D.N.Y. Aug. 7, 2014).

ALJ Russak addressed La Torre's limitations for stooping, crouching, crawling, ascending and descending ladders and scaffolding, and exposure to irritants, and determined that they "have little or no effect on the occupational base of unskilled light work." (R. 67)  ALJ Russak

however, failed to discuss La Torre's nonexertional mental limitations caused by her depression (and the medications she was taking), and in that regard ignored the "intermediate question" set forth in Bapp.

In assessing the severity of La Torre's impairments at step two of the analysis, ALJ Russak determined that La Torre had the non-severe impairment of depression.  (R. 62.)  In making his determination, ALJ Russak incorrectly stated that Dr. Broska identified "no diagnosis on Axis I" (R. 63), when in fact Dr. Broska found "[a]djustment disorder with mixed anxiety and depressed mood" on Axis I (R. 300).  It was perhaps due to this mistake that ALJ Russak went directly to the Grids at step five of his analysis, and failed to address the intermediate question: whether La Torre's adjustment disorder and depression so diminish her ability to perform the full range of work as to require introduction of a vocational expert's testimony.  In any event, ALJ Russak did not provide a reason for his failure to consider La Torre's psychiatric limitations, or explain why vocational expert testimony was unnecessary.  Such failure amounts to legal error, and requires remand.  E.g., Lugo v. Colvin, 2014 WL 5045630 at *12-13 (collecting cases); Hernandez v. Colvin, 2014 WL 3883415 at *15 ("[A]lthough the ALJ was within her discretion when she concluded that the Grid adequately addressed the Plaintiff's impairments, the ALJ's failure to explain this finding amounted to legal error."); Cruz v. Colvin, 12 Civ. 7346, 2013 WL 3333040 at *19 (S.D.N.Y. July 2, 2013) (Peck, M.J.) (The ALJ "did not explain why he treated the Grid as dispositive, despite evidence in the record of [claimant's] nonexertional limitations, including depression and chronic pain syndrome.  If ALJ Hornblass treated the Grid as dispositive because he found that [claimant's] nonexertional limitations did not significantly reduce, or only had a negligible impact on, [claimant's] work capacity, ALJ Hornblass was obligated to explain that finding."), report & rec. adopted, 2014 WL 774966 (S.D.N.Y. Feb. 21, 2014); Aas v. Astrue, No. 08-CV-04488, 2010 WL

3924687 at *11 (E.D.N.Y. Sept. 29, 2010) ("[T]he ALJ skipped the intermediate question by failing to consider whether plaintiff's alleged mental impairments/affective disorder so significantly diminished his work ability that testimony from a vocational expert was required. The ALJ's failure was legal error, and requires remand."); Henriquez v. Chater, 94 Civ. 7699, 1996 WL 103828 at *4 (S.D.N.Y. Mar. 11, 1996) (Sotomayor, D.J.) ("The record clearly indicates that no vocational expert was called.  It does not, however, indicate whether the ALJ considered the relevance of expert vocational testimony and concluded that none was needed, or whether he simply skipped this step. On remand, if the ALJ still believes that vocational testimony is unnecessary, I urge him to explain fully why [claimant's] non-exertional limitations are not significant enough to warrant vocational testimony.")[16/]

On remand, the Commissioner should seek the opinion of a vocational expert, or explain why the Grid is dispositive under the circumstances.

## CONCLUSION

For the reasons stated above, the Commissioner's motion for judgment on the pleadings (Dkt. No. 14) is DENIED, and La Torre's motion for judgment on the pleadings (Dkt. No.

---

[16/]     The Court notes that the Appeals Council also failed to consider whether vocational testimony was necessary.  (R. 7-8.)  Both Dr. Takeshige and Dr. Bhatt reported that La Torre would miss over three days of work a month because of her impairments or medical appointments.  (See pages 12, 13 above.)  Vocational expert testimony in prior cases has found that such absences make a claimant unemployable.  See, e.g., Santiago v. Comm'r of Soc. Sec., No. 13-CV-1464, 2014 WL 4793448 at *2 (E.D.N.Y. Sept. 25, 2014); Norman v. Astrue, 912 F. Supp. 2d 33, 68, 69 (S.D.N.Y. 2012); Santiago v. Astrue, 11 Civ. 6873, 2012 WL 1899797 at *9 (S.D.N.Y. May 24, 2012) (Peck, M.J.).

12)  is <u>GRANTED</u> to the extent of remanding the case to the Commissioner for further proceedings

consistent with this Opinion.


SO ORDERED.

Dated:          New York, New York
                January 26, 2015


_____
**Andrew J. Peck**
United States Magistrate Judge


Copies ECF to: All Counsel